285 N.J. Super. 567 (1995)
667 A.2d 1083
VITO VENTRE, PETITIONER-APPELLEE,
v.
CPC INTERNATIONAL, INC./C.F. MUELLER CO., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 1, 1995.
Decided December 11, 1995.
*568 Before Judges KING, LANDAU and KLEINER.
Bressler, Amery & Ross, attorneys for appellant (Richard V. Jones, of counsel, Mr. Jones and Donna Michael-Ziereis, on the brief).
No brief was filed on behalf of appellee.
The opinion of the court was delivered by LANDAU, J.A.D.
Petitioner-appellee Vito Ventre was injured in an industrial accident while employed by respondent-appellant CPC International/C.F. Mueller Co. (CPC) and instituted a proceeding in the Division of Workers' Compensation. Jurisdiction and occurrence of the accident arising out of and in the course of his employment was stipulated, subject to determination of the nature and extent of any permanent disability.
Ventre was injured when a piece of plexiglass he was cutting "caught" on the table saw, forcibly striking him on the chin, upper neck and wrist. He was hospitalized for two days, receiving stitches in his chin and a wrist cast. Ventre suffered a mandibular fracture for which no treatment was rendered. He also lost two teeth. He was out of work for eighteen months, returning to carpenter duties with the same employer.
Pursuant to practice in the Division, the matter proceeded on medical reports filed by the parties' respective experts. Cross-examination *569 of the experts was waived. The parties agreed that the sole issue for determination was the nature and extent of any permanent disability.
The judge of compensation credited Ventre's complaints in "all of the areas of which he complains," finding impaired function in "all of the same areas," a lessening to a material degree of his working ability and his ability to engage in the activities of daily living, and that "his disabilities are multiple and encompass orthopedic, otological and cosmetic problems."
The judge agreed with the assessment made by Ventre's orthopedic expert that Ventre exhibited a twenty-five percent disability in his right hand, but not for reasons articulated by the expert who, he found, "missed the boat." The judge concluded that "as a result of the combination of the ununited carpal naricular fracture and the laceration of his wrist ... a permanent orthopedic disability of 25 percent of the right hand" had been caused by the accident.
Fifteen percent of partial total was attributed to "the fracture of the mandible," upon this finding:
I am satisfied that as a result of this blow the petitioner suffered a fracture of the mid portion of the mandible which was sufficient for the purpose would not only affect his jaw but his temporomandibular joints as well as his binaural ear canals.
Ten percent of partial total, otological in nature, was awarded "for residual effects of the TMJ syndrome, the bilateral [ear] canal fracture and the tinnitus which accompanies the injury."
Another ten percent of total was attributed to a cosmetically disfiguring chin and lip scar.
The judge found a twenty-five percent binaural hearing loss, not solely related to the accident, and apportioned twelve percent of that loss as "chargeable to the effects of the trauma which Dr. Freifeld has concluded resulted in a fracture of the ear canals and Dr. West has concluded result[ed] from a cochlear injury." The apportionment assertedly was made under authority of Baijnath v. Eagle Plywood & Door Mfrs., 261 N.J. Super. 309, 618 A.2d 902 (App.Div. 1993), which discussed methods of apportioning the respective *570 impact of separate traumatic injuries occurring in different employments.
In addition, the judge awarded Ventre statutory benefits for the loss of two teeth.
The statutory entitlements for these awards were then totalled, resulting in a judgment for 303 1/4 weeks of compensation at $283 per week, or $85,890.50, plus allocations of expert and counsel fees.
CPC argues persuasively that some of the judge's findings were unsupported by credible evidence in the record because they were based upon surmise and conjecture in the submitted medical reports. More specifically, the judge made a definitive finding of bilateral ear canal fractures, resting it upon the report of CPC's expert, Dr. Freifeld, who said that although Ventre "may have had a fracture through that area as a result of the injury to his jaw, he has not compromised the ear canals sufficiently that any surgical intervention appears to be necessary." In a conclusory fashion, Dr. Freifeld's report also referred to a "probable" anterior ear canal fracture. No treating records were introduced respecting ear canal fractures. The reports of other experts, including those submitted by petitioner, showed either that external auditory canals were within normal limits, or made no mention thereof.
CPC also complains that there was no basis in the record to support the arbitrary allocation of roughly half of Ventre's hearing loss to the traumatic injury caused by the plexiglass. One expert concluded, without amplification of objective basis for the conclusion, that Ventre's hearing loss was attributable to both industrial noise (an occupational exposure) and the trauma. CPC's expert, whose report speculated on some traumatic ear canal fracture, nonetheless clearly discounted this as contributing to any material hearing loss.
We agree that the submitted expert reports fall short of providing an objective and rational evidential predicate for making an *571 apportionment as to the cause of hearing loss in this case. See, e.g., Calabro v. Campbell Soup Co., 244 N.J. Super. 149, 164, 581 A.2d 1318 (App.Div. 1990) (discussing N.J.S.A. 34:15-35.13a and N.J.S.A. 34:15-12d), affd, 126 N.J. 278, 597 A.2d 83 (1991). We do not interpret Baijnath, supra, as affording authority for simply adopting a speculative allocation of cause in the absence of adequate evidence. To the contrary, we observed in Baijnath that while proofs respecting traumatic injury causation may not permit of certainty, "an understanding of the need to present better allocation proofs may obviate the theoretical difficulties in traumatic injury situations." Baijnath, supra, 261 N.J. Super. at 316, 618 A.2d 902. After reviewing the medical reports, we see no objective basis for a finding of roughly equal causative contribution as to Ventre's hearing loss. Neither do we believe that an accurate assessment of relative causation was shown to be so unascertainable that a Quinn[1]-type equal allocation was warranted.
In other respects we believe that the several separate findings of trauma-induced injury would find sufficient, though not abundant, support in the record to warrant affirmance under Close v. Kordulak Bros., 44 N.J. 589, 210 A.2d 753 (1965).
We are concerned, however, with whether the compensation judge gave sufficient consideration to the real possibility of overlap, particularly in the two otologically related awards and the separate TMJ and mandible awards, or to the need to ascertain the true cumulative extent of impairment resulting from the various injuries he found.
CPC points to the "stacking" problem considered in Poswiatowski v. Standard Chlorine Chem. Co., 96 N.J. 321, 475 A.2d 1257 (1984), in which the Court considered the effect of the new sliding *572 scale provided by the 1979 amendments, L. 1979, c. 283, § 5, upon the schedule of benefits under N.J.S.A. 34:15-12(c). The Court noted that the weekly dollar payments provided for a worker's disability were designed to increase with the severity of disability, consistent with the legislative purpose to afford more compensation to severely injured workers while limiting awards for minor injuries. Poswiatowski, supra, 96 N.J. at 328, 475 A.2d 1257. Thus, for example, workers with injuries resulting in entitlement to 180 or fewer weeks of benefit payments receive a dramatically lower percentage of the statewide average weekly wage (SAWW) than more severely injured workers who receive awards in the higher spectrum (i.e., up to 600 weeks) of benefit entitlement as their percentage of disability increases. Id. at 322-24, 475 A.2d 1257.
In Poswiatowski, the Court held that, rather than calculating separately the weekly benefits for each of several concurrent disabilities at the weekly rate applicable to each disability, the number of weeks of benefits awarded for all of those benefits should be added together, and the weekly benefits should then be calculated based upon the cumulative number of weeks awarded. Id. at 325, 475 A.2d 1257.
The Court concluded that the legislative effort to put significantly more money in the hands of the most seriously injured workers would best be served by reflecting the cumulative effect of several discrete areas of injury upon a petitioner's working ability, rather than affording a weekly rate calculated on the assumption that each was the only injury suffered. Id. at 329, 475 A.2d 1257.
In so holding, however, the Court also made clear that:
Compensation judges must make findings that reflect an evaluation of the multiple injuries in determining whether there is a compensable disability; they must treat the individual as a whole in determining the statutory disability. The method is familiar: "It is not to be solved by adding up the fractional parts, but upon the basis of the percentage of total and permanent disability reasonably found to be produced by the several injuries considered collectively and with due regard to their cumulative effect." Orlando v. F. Ferguson & Son, 90 N.J.L. 553, 557-58 [102 A. 155] (E. & A. 1917) (evaluating loss of two or more major members).
[Id. at 330, 475 A.2d 1257.]
*573 In consequence, the Court said:
We need not be concerned that a series of niggling injuries will enable a worker to obtain an unwarranted award. The breakoff point never escalates dramatically until the 30% plateau is reached. We are confident that compensation judges can evaluate the total disability and give proper weight to the multiple injuries when fashioning an award; they will not allow the random presence of stray weeks attributable, let us say, to an extra lost tooth (4 weeks), artificially to push a case over the top. They are as aware as counsel of the sharp break in benefits after 180 weeks. Employers need not fear aberrational results because of our holding that stacking is required.
[Id. at 333-34, 475 A.2d 1257.]
and,
The compensation court is not to determine the scheduled number of weeks for each injury separately; rather, it is to look at the effect of the injuries and to make a reasonable assessment of the extent of the combined disability in terms of a percentage of permanent and total disability. This requires the court to make a judgment about the extent of impairment resulting from the combined injuries without being limited by the statutory schedules.
[Id. at 334, 475 A.2d 1257.]
We can find no basis in the judge's opinion, nor in the record, for his implicit conclusion that it was unnecessary to make a careful finding as to the combined disabling effect of the several injuries, large and small, rather than merely adding them together to produce a cumulative total which vaulted Ventre into a higher range of recovery.
CPC contends that there was insufficient weighing of the true cumulative effect of Ventre's injuries from the accident. Ventre is sixty-four and working full time at his old job, albeit with assistance when heavy carrying is required. He has some observable facial scarring, described by the judge; some degree of high frequency hearing loss requiring the volume of his television set to be turned higher; clicking of his jaw consistent with a TMJ problem (but no other TMJ-type problems); and possible tinnitus (the objective basis for this finding is not apparent to us). One hand is weaker than before, so that Ventre says he cannot do carpentry around the home, although he remains employed as a carpenter at CPC. He complains of some pain. The lost teeth *574 have been restored. The fractured mandible has presumably healed, as his jaw and mouth look and function normally.
While we do not presume to substitute our judgment for the recognized expertise of the judge of compensation, we are unable to ascertain any basis for the 303 1/4 weeks awarded by the judge, other than a simple arithmetic accumulation of the separate awards. The opinion does not "make a judgment about the extent of impairment resulting from the combined injuries without being limited by the statutory schedules," as required by Poswiatowski. See id. at 334, 475 A.2d 1257. Were a very high degree of permanent disability (more than fifty percent of total) readily apparent to us in the record presented, we might simply view this as a harmless omission. However, while Ventre's injuries were unquestionably of sufficient moment to merit a substantial compensation award, it is not so readily apparent to us that the separate disabilities found by the judge, even if supported by adequate objective medical proofs, have cumulatively produced total permanent disability exceeding fifty percent of total, i.e., a "severe loss of functional ability." See id. at 332, 475 A.2d 1257; Perez v. Pantasote, 95 N.J. 105, 116, 469 A.2d 22 (1984).
By way of illustration that this concern is well founded, we note that when the statutory award of four weeks for Ventre's loss of his now-restored two teeth was routinely added to the other awards, it brought the cumulative total over the 301-week line set by N.J.S.A. 35:15-12c for receipt of fifty-five percent of the SAWW. This alone produces a $1300 annual difference in compensation. The Poswiatowski Court's confidence, quoted above, that the random presence of stray weeks occasioned by its identical tooth example would not be allowed artificially to escalate disability awards, can only be justified by careful adherence to the requirement of focusing award findings upon the true cumulative loss of functional and working ability objectively supported by the record. See Poswiatowski, supra, 96 N.J. at 333-34, 475 A.2d 1257.
*575 A further salutary dividend realized by compliance with the Poswiatowski requirement is that it will serve as a cross-check against the duplication of disability awards when there are separate, but overlapping, areas of disability. Needless to say, such duplication is further compounded in its effect by the escalating scale of benefits for cumulative awards.
We reverse and remand for reconsideration and for amplification of the court's findings consistent with this opinion. To the extent deemed necessary by the judge of compensation, expert or other testimony may be taken to supplement the record where the submitted reports are deemed inadequate.
Reversed and remanded for further proceedings. We do not retain jurisdiction.
NOTES
[1] See Quinn v. Automatic Sprinkler, 50 N.J. Super. 468, 481, 142 A.2d 655 (App.Div. 1958) (court concluded from the medical proofs that remand could not produce better basis for accurate distribution of liability and apportioned equally).